## Bensalem Township School District Appeal

*Begley, Carlin, Mandio, Kelton & Popkin* and *John W. Dean*, for appellants.

*Eastburn & Gray*, for appellee.

*Power, Bowen & Valimont* and *Walsh, Durben & White*, for intervenors.

BIESTER, P. J., September 29, 1967.—The School District of the Township of Bensalem and the Township of Bensalem have appealed from the decision of the board of assessment and revision of taxes exempting from taxation in Bucks County parcels of land owned by the Pennsylvania Turnpike Commission situate in Bensalem Township, Bucks County, Pa., and designated as parcels 2-1-51 and 2-1-52. The Pennsylvania Turnpike Commission duly intervened in the proceeding as did the lessee of the property, namely Atlantic-Richfield Company. . .

DISCUSSION

The primary issue involved here is whether the Bucks County Board of Assessment is legally and factually justified in exempting from assessment for taxation purposes two parcels of land with the buildings thereon erected, situate on the Pennsylvania Turnpike and known as Neshaminy North and Neshaminy South, and identified by the board as tax parcels 2-1-51 and 2-1-52. The premises are owned by the Pennsylvania Turnpike and leased to the Atlantic-Richfield Company which, in turn, sublets the restaurant area to the Howard Johnson Company. The use of the premises is readily divisible into two functions, that is, that area servicing motor vehicles and that servicing the needs of the car's operator and its passengers.

The legal basis for such an exemption arises out of article IV, sec. 1, of the Pennsylvania Constitution, which provides that the legislature may, by general laws, grant tax exemptions to properties devoted to public use.

Such tax exemption is specifically referred to in section 14 of the Pennsylvania Turnpike Delaware River Extension Act of May 23, 1951, P. L. 335, 36 PS §658.14, which provides that:

"The accomplishment by the commission of the authorized purposes stated in this act being for the benefit of the people of the Commonwealth and for the improvement of their commerce and prosperity, in which accomplishment the commission will be performing essential governmental functions, the commission shall not be required to pay any taxes or assessments on any property acquired or used by it for the purposes provided in this act . . ."

The service station consists of the area devoted to the dispensing of gasoline and oil and associated therewith a garage area, a sales room area for automobile supplies and accessories, storage area for automobile supplies and accessories, and restrooms. That portion of the premises subleased to the Howard Johnson Company includes the dining alcove, a dining room area, storage rooms for frozen foods, kitchen, bakeries, a lobby, restrooms and a gift shop.

The applicable law is clearly set forth in Moon Township Appeal, 387 Pa. 144, at 148-49, and recently reiterated in Moon Township Appeal, 425 Pa. 578. These cases hold that public property used for public purposes and property the use of which is reasonably necessary for the efficient operation of the public purpose are entitled to exemption from taxation. It is likewise clear that property, even though owned by a body ordinarily tax exempt, is taxable if used by it for a commercial purpose, or if rented to a lessee for

purely a business enterprise and not a public use. The resolution of the question before us, therefore, requires a determination of whether or not such facilities are reasonably necessary to carry out the general purposes of the Pennsylvania Turnpike Delaware River Extension Act. If they be so reasonably necessary, they should be exempt from taxation. If, on the contrary, they only serve the convenience of the traveling public, they are subject to tax.

The turnpike, its appearance and length, are so well known to the average Pennsylvanian as to scarcely require detailed description. However, we have made a number of findings of fact which we will not repeat here as to its general appearance, length and usage. Perhaps the most revealing and pertinent statistic is that during the fiscal year ending May 31, 1966, 6,672,400 vehicles passed the facilities which have been exempt from taxation.

The elimination of service stations, restrooms and eating facilities, would, in the opinion of this writer, do more than result in inconvenience to the more than 18,000 operators daily passing the North and South Neshaminy facilities; it would greatly enhance the chance of accident. We are constantly being admonished, and properly so, that driving for any length of time on turnpikes without an occasional stop in a rest area, where not only may the vehicle be serviced, but the operator of it may have an opportunity to temporarily relax from monotonous high speed driving, is essential in the interest of highway safety. But, say appellants in the present case, the maintenance of the facilities at their present location is not essential, because an operator may leave the highway and discover for himself that there are certain service stations which are open 24 hours a day and also certain restaurants or diners which do not close. Such a view fails to take into consideration the fact that many drivers on the

turnpike are not familiar with the area involved and if the gasoline gauge be low, fatigue approaching, or restrooms sought, the operator would be confronted with the choice of either pushing on, possibly beyond his or the motor vehicle's capacity to drive in safety, or, alternatively, leaving the turnpike at the nearest interchange into an area perhaps completely unfamiliar to him and attempting to find food, fuel and restrooms, which he might not know were so available. We regard this approach to the problem on the part of appellants as being impractical, unrealistic and disregardful of the subjective factors involved.

Then, too, the facilities here provided are unique in that they are available *at one place* to provide service to the operator and his vehicle 24 hours a day. True, as heretofore adverted to, one leaving the turnpike at the nearest exit may find one or two gasoline stations within three-quarters of a mile of the interchange continuously open, and a diner within three miles of the exit open 24 hours a day. But does the availability of other similar facilities destroy the identity of the present facility as a public necessity? If so, where should the line be drawn, and would the mere fact that a choice may be made by the traveler take away the significance of the public use? We think not. See In re Appeal of County of Allegheny, 114 Pitts. L.J. 463, affirmed 425 Pa. 578, supra. It is likewise inapposite to suggest that the service to the public is not complete and could be enhanced by providing direct service to the motorist in distress rather than relying on private garages located off the turnpike.

Counsel for Bensalem Township and Bensalem Township School District have argued that the primary beneficiaries of these facilities are the lessee, Atlantic-Richfield, and the sublessee, Howard Johnson Restaurants, to the detriment of the taxpayers of the Township of Bensalem, and the detriment of the motoring

public. One of the arguments here advanced is that Atlantic-Richfield charges three cents more per gallon for gasoline than the prevailing price of gasoline in the area, and if this is so, it would appear contrary to the terms of the lease between the lessee and the Pennsylvania Turnpike Commission. While this fact would tend to suggest that the lessees are not abiding by the strict terms of the lease, and are operating the facilities of the leased premises for purposes of profitability to the disadvantage of the motoring public, there is uniformity in current case law that profitability does not prevent a facility from being tax exempt. The essential consideration is the use to which the premises are put, that is to say, is the use for a public purpose or for private primary benefit? The central question, the use to which premises are put, has been often referred to, but is most succinctly stated in Pittsburgh Public Parking Authority v. Board of Property Assessment, 377 Pa. 275:

"Without some element of private profit to someone the enterprise could not be conducted at all; the determinative question is whether these public properties are being used for a public purpose": page 280.

"We are, then, all of opinion that the fact that the properties of the Parking Authority in the present case are leased for operation to private parties deriving profit therefrom instead of being operated by the Authority itself does not, as the court below correctly held, destroy the tax exemption granted them by the Public Authority Law": page 282.

The words of the court in Moon Township Appeal, 387 Pa. 144, are also appropriate to the case at hand. There, it was said at page 148:

"There is likewise no question but that property the use of which is reasonably necessary for the efficient operation of the Airport, even though not indispensable or essential thereto, is also entitled to exemption. Nor

can such property be denied exemption merely because it is rented out by the Airport and thereby yields a return which serves to reduce expenses, because, where the primary and principal use to which property is put is public, the mere fact that an income is incidentally derived from it does not affect its character as property devoted to a public use". (Citing cases.)

We see no purpose to be achieved in a detailed discussion of each of the facilities afforded, as the reasonable necessity rule appears clearly and equally applicable in each instance, except as to the gift shop area, hereinafter discussed, and to some extent to the area devoted to the storage and sale of automobile supplies and accessories. As to the latter, it may well be that some of the supplies and accessories sold are not strictly items of reasonable necessity. There are, however, many that come within this category, such as tires, chains and windshield wipers, to name but a few. Certainly, to say that the facility is not reasonably necessary for the efficient operation of the turnpike because some of the items sold are a convenience, rather than a necessity, appears to be an unwarranted conclusion and would be equivalent to saying that the service of food is made unessential because chewing gum, Lifesavers, cigarettes and similar items are sold in the food area. To require the elimination of items of convenience would appear to be an impractical approach and would serve no useful purpose.

The only remaining area is the gift shop, for which no justifiable necessary use has been shown. That space should clearly be taxable. Argument has been made that even if this area should be unnecessary and taxable, since it represents only 3.25 percent of the total building area, the tax deduction becomes de minimis. We find no merit in such an argument.

The record before us is insufficient to permit us to fix a revaluation for assessment purposes arising out

of the elimination of the gift shop area from the untaxable portion of the property. As was said in the Moon Township Appeal, 397 Pa. 498, as a footnote:

"No uniform criteria or formula for assessing part of a building such as is necessary in this case has been or can be promulgated by this Court. . . It must, however, be a just and equitable separation".

In Duquesne Light Company v. Board of Property Assessment Appeals and Review, 408 Pa. 347, we are told that a fair and equitable method is to value the entire property, value the tax-exempt property and then subtract the difference. The record before us does not permit of such a revaluation.

### CONCLUSIONS OF LAW

1. Tax parcels nos. 2-1-51 and 2-1-52, on which are located the North and South Neshaminy service stations, are owned by the Pennsylvania Turnpike Commission, an instrumentality of the Commonwealth of Pennsylvania, performing an essential governmental function of the Commonwealth.

2. All parcels of land with the improvements thereon erected when owned by the Pennsylvania Turnpike Commission, if devoted to public use and reasonably necessary to the operation of the turnpike, are exempt from taxation.

3. Tax parcels nos. 2-1-51 and 2-1-52, with the improvements thereon erected, excepting the gift shop and its storage area, are devoted to a public use and are reasonably necessary to the operation of the turnpike.

4. The subject parcels of land and improvements thereon erected, excepting the gift shop and its storage area, are properly exempt from real estate taxation.

5. The gift shop and storage area associated therewith are not exempt from taxation.

6. The appeals are sustained only insofar as they relate to the gift shop and the associated storage area and are otherwise dismissed.

7. Appellants shall pay one-half of the costs and the Pennsylvania Turnpike Commission the other half thereof.

ORDER

And now, September 29, 1967, upon consideration of the testimony adduced, including the exhibits, and after due consideration of the requested findings of fact and conclusions of law submitted, it is hereby ordered and decreed that the Board of Assessment and Revision of Taxes of Bucks County remove from exemption the gift shop and storage area associated therewith situated on tax parcels nos. 2-1-51 and 2-1-52, and shall make a reassessment of the parcels with the buildings thereon erected in accordance with this opinion.

Appellants shall pay one-half of the costs and the Pennsylvania Turnpike Commission the other half thereof.